NOT FOR PUBLICATION

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOY RENE BOULDIN,

            Plaintiff,

    v.

LOGAN TOWNSHIP; LOGAN TOWNSHIP
POLICE DEPARTMENT; SGT. GEORGE
McERLAIN; PATROL OFFICER
KUPSEY; et al.

           Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 04-4586 (JBS)

OPINION

APPEARANCES:

David A. Avedissian, Esq.
THE LAW OFFICES OF DAVID A. AVEDISSIAN, ESQ. LLC
135 Kings Highway East
Haddonfield, New Jersey 08033
    Attorney for Plaintiff

James R. Birchmeier, Esq.
POWELL, BIRCHMEIER & POWELL
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
    Attorney for Defendants Logan Township, Logan Township
    Police Department, Sgt George McErlain and Patrol Officer
    Kupsey

SIMANDLE, District Judge:

    This matter comes before the Court upon Defendants Logan

Township, Logan Township Police Department, Sgt George McErlain

and Patrol Officer Kupsey's motion for summary judgment.

Plaintiff Joy Rene Bouldin's complaint arises out of a dispute at

South Jersey Auction in which Defendants Sgt. McErlain and Patrol

Officer Kupsey briefly detained and questioned Plaintiff regarding a broken piece of furniture.  For the reasons expressed below, Defendants' motion for summary judgment will be granted.

## I.    BACKGROUND

### A.    Underlying Facts

On February 23, 2002, Plaintiff Joy Rene Bouldin ("Plaintiff") was shopping at the South Jersey Auction (the "Auction"), located in Swedesboro, New Jersey.  (Def.'s Br. at Ex. D, Plaintiff's Answers to Interrogatories, No. 2.)  Plaintiff was accompanied by a friend, Marianne Morris.  (Id.)  While Plaintiff was looking at various pieces of furniture, she opened and closed the door of an armoire, and a table resting next to the armoire fell into another piece of furniture breaking the glass on that piece of furniture.[1]  (Id.)  Shortly after the furniture was broken, Plaintiff and the owner of the auction, Lisa Babington, argued about who was at fault and what the

---

[1]  According to Sgt. McErlain's police report, Plaintiff explained that:

> She was looking at cabinet [sic], and had opened a door.  The accused stated the furniture was staked two and three pieces of furniture high...[and] that the cabinet door hit another table and knock [sic] into a pair of end tables.  One of the end tables fell off the table and crashed into one of the damaged cabinet door [sic].  The end table went through the glass and broke it.

(Def.'s Br., Ex. E., Logan Twp. Police Department Investigation Report ("Investigation Report") at 1.)

2

appropriate damages would be for the broken piece of furniture. (Id.)  The Logan Township Police were called and Sgt. McErlain and Officer Kupsey responded.[2]  (Id.)

Immediately upon arrival, Sgt. McErlain asked for and was provided with, Plaintiff's identification.  (Id.)  The parties dispute what happened next.  Sgt. McErlain's Investigation Report states that he "asked Ms. Bouldin to tell [him] her side of the story" and "had to ask her two more times" to tell him what happened at which point she gave him a statement containing her perspective of the events.  (Investigation Report at 1.) Plaintiff denies that Sgt. McErlain ever asked her how the incident occurred or ever took her statement.  (Deposition Transcript of Joy Rene Bouldin at 65-66.)  Sgt. McErlain stated that he instructed Officer Kupsey to remain with Plaintiff in the office area of the Auction while Sgt. McErlain investigated the broken furniture.  (Pl.'s Interrog., No. 2.)  Plaintiff states that she requested that she accompany McErlain during his investigation to which he responded:

> [A]bsolutely not.... Under no circumstances are you to leave this room.  You are to stay right here.  You are in a lot of trouble.

(Bouldin Depo. Tr. at 58.)

---

[2]  It is not clear who called the Logan Township Police Department.

Sgt. McErlain testified that after surveying the site where the furniture was broken, he entered the office of the auction and noticed a sign stating that if merchandise is damaged or broken, the person accused of damaging or breaking the furniture will pay for it.  (Investigation Report at 2.)  Being satisfied that there was no criminal activity associated with the incident, Sgt. McErlain advised Plaintiff that, because she had damaged the piece of furniture and the policy at the Auction was for her to purchase the damaged goods, Plaintiff "would have to buy the item, [for a price of $600] or the auction owners would sign a complaint [against her] for the damages."  (Id.)  Plaintiff disputes this fact and states that Sgt. McErlain gave her the option of either (i) paying the auction $600 or (ii) being arrested, taken to jail, charged with criminal mischief, and "hav[ing] a criminal record."  (Bouldin Depo. Tr. at 68-69.)

Sgt. McErlain stated that the Plaintiff and Mrs. Babington agreed on the amount for the piece of furniture.  (Pl.'s Interog. No. 2; Investigation Report at 2.)  At no time was Plaintiff ever placed under arrest.  (Investigation Report at 1-2.; Deposition Transcript of Officer Kupsey at 23.)  After paying for the furniture with a credit card, Plaintiff left the Auction.

**B.    Procedural History**

Plaintiff filed an amended complaint in this matter on October 7, 2004.  [Docket Item No. 3.]  In her complaint, which

4

is organized in a haphazard and confusing manner, Plaintiff brings the following claims: (1) violation of Plaintiff's civil rights under 42 U.S.C. § 1983 (violations of Plaintiff's Fourth Amendment rights)(Count I, against all Defendants); (2) false arrest and false imprisonment under federal and state law (Count II, against all Defendants); (3) violations of Plaintiff's civil rights under 42 U.S.C. § 1983 (violations of Plaintiff's Fourteenth Amendment rights)(Count III, against all Defendants); (4) negligence (Count IV as to Defendants Logan Township and Logan Township Police Department); and (5) violation of the New Jersey Law Against Discrimination (Count V, against all Defendants).

On July 29, 2005, Defendants filed a motion for summary judgment [Docket Item No. 12] to which Plaintiff filed opposition on September 1, 2005.  [Docket Item No. 13.]   Defendants did not file a reply to Plaintiff's opposition.  The Court heard no oral argument.  See Fed. R. Civ. P. 78.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."[3]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[4]  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

---

[3] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

[4] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

## III. DISCUSSION

### A.   <u>Preliminary Matters</u>

At the outset of its opposition brief, Plaintiff states the following:

> Plaintiff concedes that a claim for vicarious liability does not exist against the Township of Logan under the circumstances of this case, nor can a claim be established under the New Jersey Law Against discrimination.  Additionally, it is conceded that plaintiff fails to establish the requisite permanence as required by Title 59 [the New Jersey Tort Claims Act] in order to assert a claim under state law.

(Pl.'s Opp. Br. T 4.)  Plaintiff continues, stating that "[i]t is...Plaintiff's contention that a prima facie case of false arrest and imprisonment has been set fourth against...McErlain and Kupsey."[5]  Thus, Plaintiff concedes that Plaintiff has no claim : (1) for vicarious liability against the Township of Logan and the Township of Logan Police Department;[6] (2) under the New

---

[5]  Because Plaintiff concedes its state law tort claims, the Court assumes that the prima facie case of false arrest/false imprisonment Plaintiff is referring to is a claim under the U.S. Constitution.

[6]  Plaintiff's brief does not specifically mention that Plaintiff concedes that a claim for vicarious liability does not exist as to Logan Township Police Department but the Court will assume that Plaintiff meant to include the police department in its concession.  In any event, the claims under Section 1983 must be dismissed as to the Police Department.  It is well-established that in a Section 1983 cause of action, a police department cannot be sued in conjunction with a municipality because the police department is merely an administrative arm of the local municipality and not a separate judicial entity. <u>See</u> <u>Bilbili v. Klein</u>, 2005 U.S. Dist. LEXIS 11464 * 9 (D.N.J. 2005); <u>see also</u> <u>Linden v. Spagnola</u>, No. 99-2432, 2002 U.S. Dist. LEXIS 14573, at *17-18 (D.N.J. June 27, 2002).

Jersey Law Against Discrimination; and (3) for false arrest and false imprisonment under New Jersey law (as Plaintiff cannot establish a "permanent loss of bodily function" as required by N.J.S.A. 59:9-2(d)).  As such, the Court will: (1) dismiss Counts I, II and III as against the Township of Logan and Logan Township Police Department; (2) dismiss the New Jersey state law claim of false arrest and false imprisonment (contained in Count II) against all Defendants; and (3) dismiss Count V against all Defendants.  The Court will now address the remaining issues raised in Defendants' motion.

### B.   Qualified Immunity

In moving for summary judgment on Plaintiff's civil rights claims under Section 1983, Sgt. McErlain and Officer Kupsey argue that they are entitled to qualified immunity.  Under the doctrine of qualified immunity, police officers, as public officials performing discretionary duties within the scope of their employment, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The privilege is more than a defense to liability, it is an immunity from suit. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). In determining whether an officer is immune from suit, a court

must first inquire whether "the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If a plaintiff fails to establish that a constitutional right was violated, the matter of qualified immunity is obviated and the inquiry ends. See id. If, however, a violation could be ascertained when the facts are viewed in the light most favorable to the party asserting the injury, a court must then inquire whether the right was "clearly established" at the time of the officer's allegedly unlawful conduct. Id. In making that determination, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. Put differently, "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991).

1.   **Fourth Amendment - False Arrest/False Imprisonment[7] (Counts I and II)**

In Counts I and II of the Complaint, Plaintiff alleges violations of the Fourth Amendment and false arrest/false imprisonment claims under 42 U.S.C. § 1983 related to her detention during McErlain and Kupsey's investigation of the Auction.  Defendants claim that they are entitled to qualified immunity.[8]

The first step in a qualified immunity analysis is for the Court to determine whether the facts, as alleged, show that Sgt. McErlain and Officer Kupsey's conduct violated Plaintiff's constitutional rights.  The Fourth Amendment to the United States

---

[7] False arrest or false imprisonment is "the constraint of the person without legal justification" consisting of two elements: "(1) an arrest or detention of the person against his will; (2) done without proper legal authority or legal justification." Fleming v. United Postal Serv., Inc., 255 N.J. Super. 108, 155 (Law Div. 1992).  New Jersey courts treat false arrest and false imprisonment as the same tort.  See Price v. Phillips, 90 N.J. Super. 480, 484 (App. Div. 1966).

[8] It is this Court's impression that the happenings of February 23, 2002 can be separated into two separate events for purposes of analyzing whether the officers are entitled to qualified immunity.  First, the Court will analyze whether McErlain and Kupsey are entitled to qualified immunity for detaining Plaintiff while Sgt. McErlain investigated whether there was any criminal activity surrounding the incident.  (See Section III.B.1., infra.)  Second, the Court will analyze whether McErlain is entitled to qualified immunity after he determined that the incident was caused by an accident (and thus no criminal activity existed) when he allegedly told Plaintiff that, if she did not pay Babington $600 she would be arrested, brought to jail, charged with criminal mischief, "and would have a criminal record."  (Compl. ¶ 11; see Section III.B.2., infra.)

Constitution provides that "[t]he right of the people to be secure in their persons...against unreasonable searches and seizures, shall not be violated."  A "seizure" triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968); Baker v. Felice, 2005 U.S. Dist. LEXIS 7829 (D.N.J. May 2, 2005).  To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  United States v. Place, 462 U.S. 696, 703 (1983).  A police officer, then, is justified in stopping and briefly detaining an individual if the officer has reasonable suspicion that the individual is involved in criminal activity.  See Terry, 392 U.S. at 30.  The stop and detention, however, must be based upon "specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion."  Id. at 21.

Under the present facts, Sgt. McErlain and Officer Kupsey's detention of Plaintiff during their investigation was a "seizure" triggering Fourth Amendment protections.  However, the brief detention was legally justified as Plaintiff was detained while Sgt. McErlain promptly investigated the scene of the incident and

asked questions necessary to determine if the incident was a result of Plaintiff's criminal activity or simply an accident. Sgt. McErlain was called to the Auction, presumably by an employee of the auction house, in response to a dispute over a piece of broken furniture.  Upon arrival, he was told by Lisa Babington that Plaintiff broke a piece of furniture and was refusing to pay for it.  At that point, McErlain acted reasonably by conducting a brief investigation to determine whether it was "a criminal matter." (Pl.'s Br. Ex. C, Deposition of George McErlain at 14-15.)  The investigation included taking statements from the various parties and inspecting the broken furniture and the site where the incident occurred.  Plaintiff was detained for a very brief time - no longer than 10 to 15 minutes according to Officer Kupsey's deposition testimony,[9] in the Auction's office area.  (Pl.'s Interog. No. 2; Kupsey Depo. Tr. at 33.) Concluding that the furniture was not broken due to any criminal activity, McErlain returned to the office area.  From these facts, McErlain and Kupsey's detention of Plaintiff was legally justified as the detention simply allowed the officers to

_____

[9]  Plaintiff did not directly dispute Officer Kupsey's testimony regarding the brevity of the detention.  The only evidence this Court has regarding Plaintiff's version of the length of the detention was in reference to the amount of time that passed before McErlain and Kupsey identified themselves to Plaintiff or asked for a statement from her.  (Pl.'s Interog. No. 2.)(Plaintiff stated that "a significant amount of time had passed and neither officer had identified himself to me or had taken my statement.")

investigate the potential criminal activity they were called to investigate and the Court concludes that Sgt. McErlain and Officer Kupsey's conduct of briefly detaining Plaintiff at the auction house did not violate Plaintiff's constitutional rights under the Fourth Amendment.

### 2.    Fourteenth Amendment - Due Process (Count III)

If Plaintiff's allegations are to be believed, Plaintiff's detention, however, did not end when Sgt. McErlain's completed his investigation and concluded that there was no criminal activity surrounding the broken furniture.  (Compl. ¶ 11; Bouldin Depo. Tr. 67-69; Pl.'s Interog. No. 2.)  Rather, Plaintiff testified that McErlain threatened to arrest Plaintiff, take her to jail and charge her with criminal mischief if she did not pay Babington $600 for the broken piece of furniture, facts McErlain denies.  While Plaintiff's Complaint is not entirely clear, the Court assumes that Plaintiff is claiming that she was deprived of property ($600) by coercion (an actual or threatened arrest) without due process of law (as her liability for the accident was in dispute at the time McErlain allegedly made the threat.)  The Court will analyze whether McErlain and Kupsey are entitled to qualified immunity as to these facts.

As stated above, the first step in a qualified immunity analysis is for the Court to determine whether an officer's conduct violated a constitutional right.  Viewing all facts and

13

their logical inferences in the light most favorable to Plaintiff - as this Court must at the summary judgment stage[10] - the Court could conclude that McErlain and Kupsey's alleged actions, if proven, amounted to a violation of Plaintiff's constitutional right to due process of law under the Fourteenth Amendment. Because the Court could conclude that a constitutional violation occurred, the Court must now inquire whether the right was "clearly established" at the time McErlain's allegedly unlawful conduct. Saucier, 533 U.S. at 200-01.[11]  In making this determination, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful." Id. Applied to the present case, then, the Court can determine that the officer is not entitled to qualified immunity only if the Court finds that the law was clear that a police officer cannot use the threat of arrest to resolve a private dispute when criminal conduct has been ruled out.

Here, the Court concludes that, on this issue, the law does not clearly prohibit a police officer from taking such action.

---

[10]  At the summary judgment stage, the Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. Anderson, 477 U.S. at 249.

[11]  The Supreme Court is Saucier stated further that "the concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct...if the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to th immunity defense." Saucier, 533 U.S. at 205

In their opposition papers, Plaintiff's counsel has failed to direct the Court to any case suggesting that the law is clear on this point.  Indeed, the Court's own research also fails to find such precedent in the Supreme Court or Third Circuit.  To the contrary, the Court notes a decision from the District of Connecticut suggesting that a plaintiff may not maintain a § 1983 action against a police officer who threatens to arrest a plaintiff in order to settle a private dispute.  See Smithies v. Bialoglowy, 2001 U.S. Dist. LEXIS 22959, *4 (D. Conn. Dec. 19, 2001)(dismissal of § 1983 action against a police officer who threatened to arrest  plaintiff unless she repaid a $400 debt because the officer's conduct "did not depict conduct so arbitrary and irrational as to violate substantive due process."[12]  Thus, this Court finds, as a matter of law, that it would not be clear to a reasonable police officer that his conduct would be unlawful.  As such, Sgt. McErlain and Officer

---

[12]   In Smithies, the plaintiff brought a § 1983 action claiming that her right to due process was violated when defendant police officer threatened to have her arrested for larceny if she did not pay $400 to a store owner who had accused plaintiff of failing to return a $400 item she had borrowed from the store.  See Smithies, 2001 U.S. Dist. LEXIS at * 1.  The court granted defendant's motion to dismiss on the grounds that has failed to state a claim for a violation either procedural or substantive due process.  See id. at *2-3.  With respect to plaintiff's substantive due process claim, the court held that defendant's alleged misconduct does not "shock the conscience." Id. at *3.  Moreover, the court found that the allegations "do not depict conduct so arbitrary and irrational as to violate substantive due process."  Id. at *4.

Kupsey are entitled to qualified immunity and summary judgment will be granted in their favor as to this issue.

### 3. Fourteenth Amendment - Equal Protection (Count III)

In Count III of the Complaint, Plaintiff alleges that Defendants McErlain and Kupsey violated her Fourteenth Amendment equal protection rights.  (Compl. Count III.)[13]  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1.  An allegation of racial discrimination in violation of the Constitution's guarantee of equal protection cannot survive unless the plaintiff establishes that the defendant acted with discriminatory intent. See Washington v. Davis, 426 U.S. 229, 241 (1976).

Here, Plaintiff has failed to offer any proof that either McErlain or Kupsey's actions were done with the intent to discriminate against Plaintiff because of her race.  Even taking all of Plaintiff's factual allegations as true, there is absolutely nothing in the record to demonstrate that the McErlain or Kupsey detained or questioned Plaintiff because of her racial

---

[13]  While the Complaint fails to specify the facts associated with this claim, the Court assumes that Plaintiff is referring to McErlain and Kupsey's detaining her at the auction house and that McErlain and Kupsey's treatment of her was "racially motivated."  (Compl. ¶ 13.)

16

or ethnic background and Plaintiff has not set forth anything - other than her blanket assertion that she was detained because of her race - to show that the officers acted with discriminatory intent.  Given that there is no evidence of discriminatory intent, whether direct or indirect, Plaintiff cannot demonstrate a violation of her constitutional rights of equal protection.

### 4.   Negligence (Count IV)

In Count IV, Plaintiff alleges that Defendants Logan Township and the Logan Township Police Department "as a matter of policy and practice failed to discipline, train or otherwise sanction police officers who violate the rights of citizens...thus encouraging Defendants McErlain and Kupsey...to engage in the unlawful and actionable conduct described above." (Amended Compl. Count IV ¶ 2.)  Moreover, Plaintiff alleges that Logan Township and the police department "were on actual notice of a need to train, supervise, discipline or terminate its defendant officers prior to the incident in question as other similar incidents have occurred in the past."  (Id. ¶ 5.) Plaintiff seeks damages for Plaintiff's "physical pain and suffering..., severe mental anguish" and deprivation "of her State and Federal Constitutional rights."  (Id. Damages ¶ 1.)

While Defendants have not briefed this issue in its moving papers, Defendants have (1) requested summary judgment "as to all claims" and (2) argued that "Plaintiff has failed to meet the

requirements of N.J.S.A. 59:9-2(d)." (Def.'s Br. at 14.)  For the following reasons, the Court finds that Plaintiff's negligence claim is meritless.  As it is unclear whether Plaintiff's claim is made under 42 U.S.C. § 1983 or under New Jersey state law, the Court will review Plaintiff's claim under both.

> **a.   Logan Township and Logan Township Police Department are entitled to qualified immunity**

Local governing bodies can be sued directly under Section 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978).  Municipal liability attaches only where execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  See id. at 694. In the case of either policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  In other words, an official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983.

Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694.)

Plaintiff here has not presented any evidence from which a reasonable jury could determine that Logan Township or the police department maintained an official policy or custom warranting a finding of municipal liability.  Likewise, Plaintiff has failed to demonstrate that Logan Township or the police department had actual notice of the conduct giving rise to the alleged constitutional violation or that "similar incidents have occurred in the past."  As such, the Court must grant Defendants' motion for summary judgment as to Logan Township and the police department because summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322-23 (1986); see Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001).

**b.   Plaintiff has conceded her tort claim against Logan Township and the Logan Township Police Department under New Jersey law**

In its opposition brief, Plaintiff concedes that she cannot maintain an action for false arrest/false imprisonment under New Jersey law because she cannot establish a "permanent loss of bodily function."  This being the case, this Court dismissed the New Jersey state law claim of false arrest/false imprisonment.

By conceding that she cannot establish a "permanent loss of bodily function" as required by N.J.S.A. 59:9-2(d), however, Plaintiff also concedes that she cannot maintain an action for negligence against either Logan Township or the police department.

It is well settled that N.J.S.A. 59:9-2(d) governs claims for pain and suffering damages arising from personal injuries and mental anguish caused by public entities and their employees. See Hammer v. Township of Livingston, 318 N.J. Super. 298 (App. Div. 1999). This section establishes certain threshold injury requirements for recovery - specifically providing that no damages shall be awarded against a public entity for pain and suffering or mental anguish unless Plaintiff proves a "permanent loss of a bodily function." Id. at 305-307. Thus, by conceding that Plaintiff cannot establish a permanent loss of bodily function, Plaintiff cannot then maintain an action under a negligence theory against Logan Township of the police department as Plaintiff cannot meet the threshold requirement for damages. In the alternative, Plaintiff here has failed to come forward with any evidence from which a reasonable jury could conclude that Logan Township or the police department (1) was negligent in supervising, training or disciplining Sgt. McErlain, Officer Kupsey or any other police officer or (2) had any knowledge of past "similar incidents" by either McErlain or Kupsey. Thus, the

20

Court will grant Defendants' motion for summary judgment as to Count IV and Plaintiff's claim of negligence will be dismissed.

**IV.   CONCLUSION**

For the reasons discussed above, Defendants' motion for summary judgment will be granted.  The accompanying Order is entered.

**March 27, 2006**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge